# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JOHN GIDDIENS,** | ) | |
| **on behalf of himself and all others** | ) | |
| **similarly situated** | ) | **C.A. No. 13-cv-7115-LDD** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **CLASS ACTION** |
| **INFINITY STAFFING SOLUTIONS and** | ) | |
| **LYNEER STAFFING SOLUTIONS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons set forth in the accompanying Memorandum of Law, John Giddiens hereby

seeks final approval of the class action settlement preliminarily approved by this Court by Order

dated August 31, 2015. Dkt. No. 28.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  January 4, 2016          BY:     */s/  James A. Francis*
                                         JAMES A. FRANCIS
                                         DAVID A. SEARLES
                                         LAUREN KW BRENNAN
                                         Land Title Building, Suite 1902
                                         100 South Broad Street
                                         Philadelphia, PA 19110
                                         (215) 735-8600

                                         *Attorneys for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN GIDDIENS,** ) | |
| **on behalf of himself and all others** ) | |
| **similarly situated** ) | **C.A. No. 13-cv-7115-LDD** |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **CLASS ACTION** |
| **INFINITY STAFFING SOLUTIONS and** ) | |
| **LYNEER STAFFING SOLUTIONS** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     NATURE AND HISTORY OF THE LITIGATION............................................2

        A.     Procedural History ................................................................................3

        B.     Written Discovery and Depositions .........................................................3

        C.     Settlement Negotiations and Mediation ..................................................4

III.    SUMMARY OF THE SETTLEMENT ..............................................................4

        A.     The Settlement Classes ...........................................................................5

        B.     Settlement Benefits ................................................................................5
               1.     Monetary Compensation ...............................................................5
               2.     Costs of Notice.............................................................................6
               3.     Service Award for Class Representative........................................6
               4.     Attorneys' Fees and Costs ............................................................6
               5.     Class Notice .................................................................................6

IV.     ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ............................7

        A.     Numerosity.............................................................................................8

        B.     Commonality...........................................................................................8

        C.     Typicality ...............................................................................................9

        D.     Adequacy of Representation ..................................................................10

        E.     Rule 23(b)(3) Considerations.................................................................11

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE
        AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ......................13

        A.     The Complexity, Expense And Likely Duration Of The Litigation ........................15

        B.     The Reaction Of The Class To The Settlement .......................................16

        C.     The Stage Of The Proceedings And The Amount Of Discovery Completed..........16

i

D.  The Risks Of Establishing Liability.........................................................17

E.  The Risks Of Establishing Damages.......................................................18

F.  The Risks Of Maintaining The Class Action Through Trial ...................19

G.  The Ability Of The Defendant To Withstand A Greater Judgment.........19

H.  The Reasonableness Of The Settlement In Light of
The Best Possible Recovery.....................................................................20

I.  The Range Of Reasonableness Of The Settlement To A Possible
Recovery In Light Of All The Attendant Risks Of Litigation ................21

VI.  INDIVIDUAL SETTLEMENT AND SERVICE AWARD.............................21

VII.  CONCLUSION.................................................................................................22

## I.      INTRODUCTION

Plaintiff John Giddiens ("Representative Plaintiff"), by the undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Final Approval of the proposed settlement of his claims brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA") against Defendant Infinity Staffing Solutions, LLC d/b/a Lyneer Staffing Solutions ("Defendant" or "Infinity"). The terms of the settlement are set forth in the Settlement Agreement submitted on August 21, 2015. Dkt. No. 27-2).[1]  As discussed herein, the proposed settlement provides comprehensive equitable and compensatory relief for the Settlement Classes and meets all of the standards for settlement approval under Rule 23(e). It should, therefore, be granted final approval as fair, reasonable and adequate as to all Class members.

The settlement represents an excellent resolution for numerous reasons. First, in a consumer class action brought under the FCRA, which is remedial in nature, the settlement assures practice changes by Defendant Infinity that will benefit consumers in the future. Directly as a result of the lawsuit, Defendant has corrected the conduct that gave rise to the underlying action; namely, it has changed its procedures for obtaining authorization from consumers to procure consumer reports about applicants for employment, and its procedures for notifying consumers about the results of those reports.

Second, the settlement provides material benefits to the Settlement Class members through the payment of guaranteed compensatory damages without the need to submit a claim form. B(b)(3) Class members, who had negative background check results returned to Infinity and were never subsequently placed for employment, will each receive $1,000. This represents 100% of the

---

[1]      Plaintiff has simultaneously moved for an award of attorneys' fees and costs pursuant to the Settlement Agreement.

statutory damages to which they would be entitled if Plaintiff were entirely successful at trial, without proof of any actual injury.  B(b)(2) Class members, who signed an authorization form allowing Infinity to obtain a background check which contained a waiver and other extraneous language, will each automatically receive $110, without the need to show that they were harmed.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement.

Settlement was only reached after eighteen months of litigation and a detailed mediation under the auspices of the Hon. Joel B. Rosen (Ret.).  There can be no question that negotiations were conducted in an arms-length manner.

For these reasons, and those set forth in greater detail below, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements.  *See, e.g., In Re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II.      NATURE AND HISTORY OF THE LITIGATION

This is a consumer class action brought under the FCRA against Defendant Infinity, a user of consumer reports for employment purposes.  Plaintiff's Complaint asserts two violations of the FCRA.  First, Plaintiff asserts that Defendant willfully violated section 1681b(b)(2) of the FCRA through its practice of requiring all applicants for employment to sign a uniform "Authorization and Release Form," allowing Defendant to obtain a consumer report for employment purposes, which did not consist "solely" of the authorization as required by the FCRA.  Second, Plaintiff asserts that Defendant willfully failed to provide the applicants who were the subjects of these reports with notice and copy of the report before taking adverse action against them as required in section 1681b(b)(3) of the FCRA.  Since the filing of this case, Defendant has begun using a

different authorization form, and now provides notice and a copy of the consumer report at issue to consumers when negative results are returned. Defendant, however, has consistently denied that it violated the FCRA.

**A.     Procedural History**

Mr. Giddiens filed this action in the United States District Court for the Eastern District of Pennsylvania, captioned *Giddiens v. Infinity Staffing Solutions, Inc. and Lyneer Staffing Solutions.*, C.A. No. 12-2624, on December 6, 2013. Dkt. No. 1. On March 17, 2014, Defendant filed a Motion to Dismiss Count I of the Complaint, which contained Plaintiff's allegations of a willful violation of section 1681b(b)(2). Dkt. No. 4. Plaintiff filed an Amended Class Action Complaint on April 2, 2014 (Dkt. No. 6), and Defendant filed its Answer on May 16, 2015. Dkt. No. 10.

**B.     Written Discovery and Depositions**

The parties embarked upon discovery, including the exchange of interrogatories and responses, and the production of documents. The parties and relevant third parties also agreed to cross-production of the discovery materials produced during the related case of *Giddiens v. First Advantage LNS Screening Solutions, Inc.*, C.A. No. 12-2624 (E.D. Pa.), including thousands of pages of documents and the transcripts of seven depositions of representatives of the consumer reporting agency that produced the consumer report about Plaintiff. The material from the related case also included a production of materials from Infinity related to Plaintiff's application for employment, and the transcript of the deposition of Infinity's president regarding Infinity's practices for obtaining consent to procure background reports and practices for notifying applicants regarding the results of those reports.

C.      **Settlement Negotiations and Mediation**

On February 25, 2015, the parties conducted an arms-length, contentious, lengthy, and complicated in-person mediation session with the Honorable Judge Joel B. Rosen (Ret.).  The parties were unable to reach an agreement during this mediation session, and continued to pursue discovery.

The parties then conducted additional productive good-faith settlement discussions in May and June 2015, with the continued assistance of Judge Rosen, and agreed to modify the existing scheduling order to continue these discussions.  Dkt. Nos. 22, 23.  In June 2015, the parties were able to arrive at a proposed settlement which they believe is fair, reasonable and adequate – and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal. *See* Dkt. No. 27-2, Settlement Agreement attached as Appendix I to Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  It took the parties an additional several weeks to negotiate the terms of the proposed notice to the settlement classes and preliminary and final proposed orders, and to reduce all of the terms of the settlement to writing.

### III.      SUMMARY OF THE SETTLEMENT

The parties have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis.  The terms of the settlement are set out in the Settlement Agreement filed on August 21, 2015.  Dkt. No. 27-2.  The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the Classes.

A.      **The Settlement Classes**

The two classes of consumers covered by the settlement are defined as follows:

**B(b)(2) Class:** All natural persons residing within the United States and its territories regarding whom, beginning two years prior to the filing of the Complaint

and continuing through the conclusion of this action, for whom Infinity procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially in the form of the Authorization for Release of Information form provided to Plaintiff Giddiens, described in and attached to the Amended Complaint.

**B(b)(3) Class:** All persons residing in the United States and its territories who (i) within two years prior to the filing of the Complaint and continuing through the conclusion of this action; (ii) applied for employment with Infinity; (iii) were the subject of a consumer report used by Infinity for employment purposes; (iv) were the subject of an adverse employment action by Infinity; and (v) were not provided with a copy of the report and/or a written summary of their rights under the FCRA prior to the adverse action.

*Id*. at subsection 3.1.1.

## B.   Settlement Benefits

### 1.   Monetary Compensation

The Settlement Agreement provides for each class member who takes no action upon receiving the notice of the Settlement to receive a cash payment, without the need to file a claim form.   Members of the B(b)(2) Class, who signed Infinity's Authorization for Release of Information Form, will receive automatic payments of $110.  Dkt. No. 27-2 at subsection 5.1.1. Members of the B(b)(3) Class, who did not receive copies of consumer reports obtained for employment purposes and who were never placed for employment, will receive automatic payments of $1,000.  *Id.* at subsection 5.1.2.

To the extent that any funds remain after funding of costs of notice and administration the automatic payments, a court-approved service award to the Representative Plaintiff, and attorneys' fees and costs approved by the Court, such funds will be distributed to the Philadelphia Unemployment Project, the *cy pres* recipient designated by the parties and approved by the Court. *Id.* at subsection 5.6.

5

### 2. <u>Costs of Notice</u>

All costs of notice relating to the settlement and all necessary and reasonable costs of administering the disbursement of consideration, and other administrative expenses including, but not limited to, postage charges, printing costs, a telephone assistance program, and all other notice costs and other charges as may be approved by the parties will be paid out of the Settlement Fund. Dkt. No. 27-2 at subsections 3.3.6, 5.3, and 5.5.

### 3. <u>Service Award for Representative Plaintiff</u>

Subject to court approval, the parties have agreed that the Representative Plaintiff will be paid the sum of $5,000 by the Defendant, and to which the Defendant will not object, for his individual settlement award and his services in connection with representing the Classes. Dkt. No. 27-2 at Art. 5.2.1.

### 4. <u>Attorneys' Fees and Costs</u>

Subject to court approval, Infinity has agreed to pay, and agrees not to object or engender objection to, the sum of $276,390 for the combined attorneys' fees and costs incurred by Class Counsel in the prosecution of the litigation. Dkt. No. 27-2 at subsection 5.2.2. The amount of attorneys' fees and expenses to be paid to Class Counsel was not agreed to by the parties until agreement was reached in principle on the other terms of this Settlement Agreement. Plaintiff has contemporaneously filed his Motion for Attorneys' Fees and Reimbursement of Expenses detailing the fees and costs in this matter.

### 5. <u>Class Notice</u>

The settlement provides for a mutually agreed-upon Settlement Administrator, First Class, Inc. ("First Class"), to perform settlement administration responsibilities. Dkt. No. 27-2 at subsection 3.3.1; Preliminary Approval Order, Dkt. No. 28.

Pursuant to that agreement, First Class mailed notice to 4,296 members of the Classes after removing duplicate records and a single record which was missing a street address. *See* Declaration of Bailey Hughes of First Class, Inc. Regarding Settlement Notice Program ("Hughes Decl."), Dkt. No. 32 at ¶¶ 7-8. Undeliverable notices totaled 1,119, and 59 notices were forwarded or re-mailed to a new address. *Id.* at ¶¶ 11-12.

First Class established and maintained a website dedicated to the settlement, www.InfinityClassAction.com. *Id.* at ¶ 3. The website listed the exclusion and objection deadlines, as well as the date, time and location of the Court's Fairness Hearing. *Id.* Copies of the Class Notices, the Settlement Agreement, and the Amended Complaint were posted on the website so that they could be downloaded by members of the Classes. *Id.* The settlement website went live on September 3, 2015, and is accessible 24 hours a day, 7 days a week. *Id.*

First Class also established and maintained a toll-free telephone number for class members to call to receive information about the settlement, and leave a message to have their call returned if needed. *Id.* at ¶ 4. The toll-free number remains live. *Id.*

As of December 29, 2015, First Class received two objections to the settlement from members of the B(b)(2) Class, one of which was subsequently withdrawn in writing. Hughes Decl. at ¶ 13. As of the same date, First Class received no requests for exclusion from either Class. *Id.* at ¶ 14.

## IV.   ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

When the Court preliminarily approved this settlement, it considered whether the settlement class could be conditionally certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of

Rule 23).  As final approval of the settlement also involves the determination that certification of the Settlement Classes is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  In support of his contention that proper and sufficient grounds for class certification exist under Rule 23, Plaintiff would show the following:

A.    **<u>Numerosity</u>**

Here, the Parties have determined through discovery that the B(b)(2) Class consists of 4,373 consumers, and the B(b)(3) Class consists of 68 consumers. These class sizes are certainly sufficient to establish that joinder is impracticable.

B.    **<u>Commonality</u>**

With respect to the B(b)(2) Class, the main question is whether Defendant, by employing a policy and practice of requiring all candidates for placement for employment to sign a uniform Authorization and Release Form containing extraneous language including a waiver of liability, willfully and negligently violated section 1681b(b)(2) of the FCRA, which requires users of consumer reports for employment purposes to obtain consent using a document consisting "solely" of the disclosure that a consumer report will be obtained.  With respect to the B(b)(3) Class, the main question is whether Defendant willfully and negligently violated section 1681b(b)(3) of the FCRA by uniformly failing to provide job applicants who were the subjects of consumer reports containing adverse information with notice and a copy of the relevant report prior to taking adverse

action against them.

Cases presenting standardized consumer reporting practices invariably present common predominating issues.  As Judge Brody held in a similar case, "the factual and legal basis of the claim is common to all Plaintiffs; Plaintiffs allege that the standard reinvestigation letter that Equifax sent to prospective class members in response to a dispute over public record information contains misstatements and misrepresentations in violation of the FCRA. Thus, Rule 23(a)(2) is satisfied." *Chakejian v. Equifax Information Services, LLC,* 275 F.R.D. 201, 209 (E.D. Pa. 2011).

Where, as here, a defendant engaged in standardized conduct toward putative class members, commonality is satisfied.  *In re Prudential*, 148 F.3d at 310. *See also Perry v. FleetBoston Financial Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005) (finding Rule 23 requirements met in consumer class action and noting cases routinely certified where 'defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.'"

## C.   <u>Typicality</u>

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*, 148 F.3d at 311.  The threshold for establishing typicality is low.  Typicality does not require that the claims of the class members be identical.  *Eisenberg v. Gagnon*, 766 F.2d at 786. Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982); *see also* H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 3.13.

9

The Representative Plaintiff is a member of the both Settlement Classes, has the same interest in resolution of the issues as all other members of each Class and his claims are typical of all members of each Class.  Plaintiff was affected by the Defendant's practices in the same manner as all members of the Classes.  *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1998).  In other words, the Representative Plaintiff's claims are typical and aligned with the interests of the rest of the members of the Settlement Classes.

D.    **Adequacy of Representation**

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class.  *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Mr. Giddiens, the Representative Plaintiff, has no interests antagonistic to the Settlement Classes and has fairly and adequately represented the interests of the Settlement Classes.  Mr. Giddiens was found by this Court to be an adequate class representative in the related case of *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624 (E.D. Pa. Jan. 20, 2015) (Doc. 55, ¶ 5).

Plaintiff's attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.[2]

---

[2]    *See, e.g., Magallon v. Robert Half Int'l, Inc.*, ____ F.R.D. ___, 2015 WL 877898, at *10 (D. Or. Nov. 10, 2015) (opinion and order certifying class on contest); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015); *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-c-v754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (finally approving class settlement, including appointment of class counsel, over objections) *aff'd sub nom Berry v. Schulman* ___ F.3d ___, 2015 WL 7888729, at

E.    **Rule 23(b)(3) Considerations**

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3).  An action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

> (3)    the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The requirement that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant.  *In re Prudential*, 148 F.3d at 314-315.

Plaintiff has alleged such a common course of conduct by Infinity.  Plaintiff alleges on behalf of the B(b)(2) Class that Defendant failed to comply with section 1681b(b)(2) of the FCRA by using a form authorization for consent to obtain consumer reports for employment purposes that did not consist solely of the disclosure, and instead included extraneous language, including

---

*9-10 (4th Cir. Dec. 4, 2015);   *King v. Gen. Info. Servs., Inc.*, No. 2:10-cv-6850 (E.D. Pa. Feb. 20, 2013) (Dkt. No. 74, Order appointing interim class counsel);  *LaRocque v. TRS Recovery Services, Inc.*, 2012 WL 291191 (D. Me. July 17, 2012); *Serrano v. Sterling Testing Systems, Inc.* 711 F. Supp. 2d 402 (E.D. Pa. 2010); *Summerfield v. Equifax Information Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Marino v. UDR*, 2006 WL 1687026, C.A. No. 05-2268 (E.D. Pa. June 14, 2006); *Seawell v. Universal Fidelity Corp,* 235 F.R.D. 64 (E.D. Pa. 2006); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D.105 (E.D. Pa. 2005); *Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259 (E.D. Pa. 2004).  *See also White v. Experian Info. Solutions*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014) (finding Francis & Mailman "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation.").

an impermissible waiver of liability.   On behalf of the B(b)(3) Class, Plaintiff alleges that Defendant failed to comply with section 1681b(b)(3) of the FCRA by taking adverse action against applicants based in whole or in part on information in consumer reports, without first providing them with notice and a copy of the relevant report.   The internal policies and procedures that Defendant followed in obtaining consent to run backgrounds checks on prospective employees and notifying them about the results of such backgrounds checks – factual issues central to Plaintiff's claims – are generally common to all members of the Settlement Classes.

In addition, Plaintiff alleges on behalf of both Settlement Classes that Defendant's alleged failures to comply with the FCRA were "willful," *i.e.*, that there is no objectively reasonable interpretation of the FCRA, as a matter of law, that would support Defendant's view that it was permissible to include a waiver of rights in its form authorizations, or to completely fail to provide notice to consumers regarding adverse results of backgrounds checks.   *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007).   These are predominating legal questions common to all members of the respective Settlement Classes.

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals.   In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here.   *See*, *e.g., Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

Moreover, such a certification permits individual claimants to opt out and pursue their own actions separately if they believe they can recover more in an individual suit.

Thus, both predominance and superiority are satisfied.

Solely for the purposes of settlement, Defendant does not dispute that the Classes should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should certify the Classes for settlement purposes.

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval.  NEWBERG at § 11.24.  Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval hearing.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf.  The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *In re Prudential*, 148 F.3d at 317; *In re Rite Aid Corporation Securities Litig.*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005) (on remand).

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975). A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution. Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

14

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute.  An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved.

## A.    The Complexity, Expense And Likely Duration Of The Litigation

Absent the settlement, the Court would be required to rule on the many issues likely to be raised in the parties' briefing on class certification and summary judgment.   While the Representative Plaintiff believes he would prevail on all issues, there is at least some risk he would not.

Even if Plaintiff was able to prevail on class certification and successfully defeat an expected motion for summary judgment, a lengthy and expensive trial would most likely ensue. Trial preparation on both sides would be necessary and a jury trial would eventually be before the Court.  Such a trial would likely present challenges for Plaintiff.  To recover on the claim for statutory damages, Plaintiff would have to prove willfulness at trial, a high hurdle to clear. *See Reibstein v. Rite Aid Corp.,* 761 F.Supp.2d 241, 251–52 (E.D. Pa. 2011), citing *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56–57 (2007); *see also Sapp v. Experian Information Solutions, Inc.,* 2013 WL 2130956, at *2 (E.D. Pa. May 15, 2013) (noting potential of successful willfulness defense).  It would be unrealistic not to expect appeals from any result reached.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties.  *See In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

**B.**     <u>The Reaction Of The Class To The Settlement</u>

As set forth above, notice has been directly mailed to members of the Settlement Classes advising them of the terms of the settlement and their right to exclude themselves from the Classes. The deadline for Class members to exclude themselves and to object was November 27, 2015. Doc. 38-2 at subsections 3.4.1, 3.4.3(a); Dkt. No. 28.   As of December 21, 2015, not a single Settlement Class member has elected to be excluded from either Class.  Hughes Decl., Dkt. No. 32 at ¶ 14.   Two members of the B(b)(2) Class filed objections with the Court. Dkt. Nos. 30-31. Class Counsel spoke to each objector, and each indicated an intention to withdraw his objection. Objector Floyd Earl Busby subsequently withdrew his objection in writing.  Hughes Decl., Dkt. No. 32 at ¶ 13.[3]

The fact that so few class members have stated objections or chosen to opt out of the settlement is convincing evidence of the proposed settlement's fairness and adequacy.  *See In re Rite Aid Securities Litig*., 396 F.3d 294, 305 (3d Cir. 2005) (agreeing with district court that two objections out of 300,000 class members was a "rare phenomenon"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

**C.**     <u>The Stage Of The Proceedings And The Amount Of Discovery Completed</u>

The parties in this case engaged in extensive discovery, exchanging thousands of pages of documents, and had the opportunity to review extensive deposition testimony from the related

---

[3]     The other objection, filed by Shawn S. Morales (Doc. 30), described a general dissatisfaction with the settlement based on his view that Defendant acted under "false pretenses," and asked "How can u believe in something or someone that's not truth based, in a legitimate business.  Is this what American was built on?" *Id*.  After speaking with Class Counsel, Mr. Morales appeared to obtain a better understanding of the settlement, and indicated he would withdraw his objection.  He had not formally done so as of the filing of this Motion.

*Giddiens v. LexisNexis* case, including Plaintiff's deposition and the testimony of a corporate representative of Infinity regarding its policies and procedures.  In addition, an all-day mediation session that ultimately proved unsuccessful at least had the benefit of acquainting the parties' with each other's positions.

Thus, when the parties agreed to resume settlement discussions, they had sufficient information to informatively participate in that proceeding.  The settlement negotiations were adversarial and somewhat protracted, but eventually the parties were able to reach an agreement in principle to settle.  After hashing out the details of the Settlement Agreement and the collateral settlement documents, the parties formally sought preliminary approval of a settlement approximately eighteen months after the case was filed.

The final settlement occurred only after the parties were able to assess its fairness adequately.  As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

## D.      **The Risks Of Establishing Liability**

The risk of establishing liability is another important factor warranting final approval of the settlement.  To prevail at trial, Plaintiff would need to succeed on his claims that the Defendant's actions violated the FCRA.  Defendant denies that it has committed any wrongful acts or violations of law or that it has any liability to the Plaintiff or the Settlement Classes.

While Plaintiff strongly believes that the Defendant's activity violated the law as set forth in his Complaint, he also recognizes the risk that the Court or a jury might not make that finding.

With respect to the B(b)(2) Class, the most significant risk with respect to liability is that some courts have found that even the inclusion of waiver language does not render an authorization form to be not stand-alone in violation of 15 U.S.C. § 1681b(b)(2).  *See, e.g. Smith v. Waverly Partners, LLC*, 2012 WL 3645324 (W.D.N.C. Aug. 23, 2012); *Schoebel v. Am. Integrity Insr. Co. of Florida*, 2015 WL 3407895 (M.D. Fla. May 27, 2015).  With respect to the B(b)(3) Class, Defendant consistently asserted that because its business model involved maintaining "pools" of available workers, many of whom were never placed regardless of the results of their background reports, there could be no determination of class-wide liability on the FCRA section 1681b(b)(3) claims.

Although Plaintiff was prepared to take on these burdens and make substantial arguments opposing Defendant's positions as set forth above, the risks he faced were not insignificant.

**E.**      **The Risks Of Establishing Damages**

Even if Plaintiff were to overcome the liability obstacles, there are also risks in obtaining statutory damages, which Plaintiff has avoided by virtue of the proposed settlement.  The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions.  In this case, Plaintiff and the members of the Settlement Classes were seeking statutory damages under the FCRA in the range of $100 to $1,000 per class member, as well as punitive damages.  15 U.S.C. § 1681n.

The value of the settlement to Settlement Class Members is $850,000.00 in total class recovery.  Each member of the B(b)(2) Settlement Class that does not opt out is guaranteed $110, without the need to submit a claim form and without any proof of actual injury.  Furthermore, each class member who is also a member of the B(b)(3) Class (all of whom are also members of the B(b)(2) Class) will also receive a guaranteed payment of $1,000, the statutory damages maximum under the FCRA, without the need to submit a claim form and without any proof of actual injury.

18

Furthermore, the settlement as a whole will result in substantial practice changes that will benefit all Settlement Class members, as well as others in the future.  Also, even if Infinity were to be found liable for willful conduct, and Plaintiff and the Classes were awarded statutory damages, that award amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent.  15 U.S.C. § 1681n(a) and § 1681o(a).

Thus, this settlement avoids the litigation risk to the Settlement Classes and secures tangible and useful relief that may not be obtainable after trial. The risk of no damages, or a lower damages award at trial, as well as limitations on the Court's ability to award injunctive relief under the FCRA, supports final approval of the Settlement Agreement.

**F.    The Risks Of Maintaining The Class Action Through Trial**

The settlement here comes before Plaintiff has moved for class certification.  Defendant would be expected to vigorously oppose certification, and even if class certification were granted, it would not be surprising if Defendant pursued an interlocutory appeal under Rule 23(f).

Alternatively, even if the case were certified, it is likely that Defendant would seek decertification, either before trial, during trial or on appeal.  *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002).  While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

**G.    The Ability Of The Defendant To Withstand A Greater Judgment**

The ability of a defendant to withstand a greater judgment is a particularly relevant consideration "where a settlement in a given case is less than would ordinarily be awarded but the

defendant's financial circumstances do not permit a greater settlement." *Reibstein,* 761 F. Supp. 2d at 254.  Here, this factor is neutral.

**H.     The Reasonableness Of The Settlement In Light Of The Best Possible Recovery**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial. Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery.  Thus, a settlement is advantageous to all concerned.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified,* 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of his ability to prevail at trial, no final adjudication has been made as to the validity of his claims.  Plaintiff also recognizes that Defendant has continued to deny all liability and allegations of wrongdoing and that Plaintiff's claims would be threatened with dismissal in connection with dispositive motions which would be expected to be filed and briefed.  In *In re Greenwich Pharmaceutical Securities Litig.*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million:

[P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages. When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

*Id.* at \*5. *See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of settlement that provided 5.2% of best possible recovery).

Through the proposed settlement, Plaintiff has obtained a very reasonable benefit for the Settlement Classes under the FCRA. Moreover, through the practice changes that the lawsuit triggered, Plaintiff has achieved what essentially acts as a settlement injunction requiring Infinity to improve its practices in the future. This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Settlement Classes. The monetary compensation available under the Settlement Agreement is entirely in line with comparable settlements under the FCRA.

Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

**I.     The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation**

Essentially, this factor is an amalgam of the analysis described above. When the risks of liability and damages are considered in light of the total potential recovery, this settlement is an excellent result for the Settlement Class.

## VI.     INDIVIDUAL SETTLEMENT AND SERVICE AWARD

Class Counsel also seeks this Court's approval of a five thousand dollar ($5,000.00) individual settlement and service award for John Giddiens, for his willingness to undertake the risks of this litigation and shoulder the burden of such litigation. In this case, there would be no benefit to Class members if the Representative Plaintiff had not stepped forward. Mr. Giddiens devoted significant time and energy to the litigation, including reviewing documents, assisting

21

with compiling responses to written discovery requests and consulting with counsel as necessary. He has totally fulfilled his obligations as a class representative. Class Counsel therefore request that the Mr. Giddens be approved for the award described above and as set forth in the Settlement Agreement. The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that the Representative Plaintiff achieved for the Settlement Classes. Class members were notified that Class Counsel would request an award for the Representative Plaintiff in this amount and no Class member objected to that proposed award.

This award is well within the range of awards made in similar cases. *See Berry*, 2014 WL 4403524, at *16 (awarding $5,000 to each of several class representatives); *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624 (E.D. Pa. Jan. 20, 2015) (Doc. 55, ¶ I) (awarding class representative $10,000); *Robinson v. General Info. Servs., Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) at Doc. 55 (final approval order awarding $10,000 individual settlement to class representative); *Sapp,* 2013 WL 2130956, at * 3 (awarding $15,000 to class representative in FCRA settlement); *McGee,* 2009 WL 539893, at *18 ($3,500); *Barel v. Bank of America,* 255 F.R.D. at 402-403 ($10,000); *Perry v. Fleet Boston Financial Corp*.,  229 F.R.D. 105, 118 (E.D. Pa. 2005) (awarding $5,000, and citing cases);.  Accordingly, the award requested for the Representative Plaintiff should be approved.

## VII.   <u>CONCLUSION</u>

As concluded by Judge Brody in approving a settlement of FCRA claims in the *Chakejian* case, "this settlement is fair, adequate, and reasonable. Such a finding is further bolstered by previous court decisions approving similar settlements whose terms were somewhat less favorable than these." *Chakejian*, 275 F.R.D. at 216 (citations omitted).  *See also Sapp*, 2013 WL 2130956,

at \*2 ("There is no question but that the settlement was a result of hard-fought, arm's-length negotiation…. In sum, the settlement is unquestionably fair, adequate and reasonable").

The Representative Plaintiff requests final approval of the proposed settlement herein for the same reasons.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  January 4, 2016          BY:     _/s/  James A. Francis_____
                                         JAMES A. FRANCIS
                                         DAVID A. SEARLES
                                         LAUREN KW BRENNAN
                                         100 South Broad Street, Suite 1902
                                         Philadelphia, PA 19110
                                         (215) 735-8600

                                         *Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused a true and correct copy of the foregoing

to be served via the Court's ECF Notification system upon all counsel of record.

Dated:  January 4, 2016                              _/s/ James A. Francis_
                                                     JAMES A. FRANCIS